Jeffrey D. **BRIERLY**, Administrator
of the Estate of Paul Brierly,
Plaintiff–Appellant,

v.

**ALUSUISSE FLEXIBLE PACKAGING,
INC.;** David Ellison, Defendants–
Appellees.

No. 97–6190.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 27, 1998.

Decided June 10, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied July 30, 1999.

Joseph M. Kelly (briefed), Fred E. Fischer (argued and briefed), Fischer & Greene, Louisville, KY, for Plaintiff–Appellant.

William P. Swain (briefed), John W. Phillips (argued and briefed), Michael S. Maloney (briefed), Boehl, Stopher & Graves, Louisville, KY, John L. Smith (briefed), John H. Harralson, III (briefed), Smith & Helman, Louisville, KY, Arnold Taylor (argued and briefed), O'Hara, Ruberg, Taylor, Sloan & Sergent, Covington, KY, for Defendants–Appellees.

Before: GUY, DAUGHTREY, and MOORE, Circuit Judges.

## AMENDED OPINION

DAUGHTREY, Circuit Judge.

This diversity wrongful-death action was originally filed in state court against two defendants, only one of whom had been served when the case was removed to federal court. The district court remanded, after finding lack of proof of complete diversity. When the case was removed a second time by the previously unserved defendant, however, the district court denied the plaintiff's renewed motion to remand, finding complete diversity and concluding that the one-year time limitation on removal of diversity cases contained in 28 U.S.C. § 1446(b) was inapplicable. On the merits, the district court then granted the defendants' motions for summary judg-

ment, holding that the plaintiff does not meet any of the exceptions to the Kentucky Workers' Compensation Act that would permit the filing of an independent wrongful death action. Finding no error, we affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

Paul Brierly was killed in an explosion at the Alusuisse Flexible Packaging plant on August 30, 1993. Electing to forego the decedent's statutory right to workers' compensation benefits, Brierly's estate instead filed this wrongful death action in state court, alleging that Alusuisse "deliberately intended" to kill Brierly, which, if proven, would exempt him from the exclusive remedy provisions of the Kentucky Workers' Compensation Act.

At the time of his death, Brierly was a co-op student attending Shelby County Vocational School and was working with Alusuisse under the supervision of David Ellison, among others. Alusuisse manufactures materials for packaging and labeling foods and pharmaceutical medicines. The printing press components used to produce the labels gradually develop a buildup of ink and adhesive materials, and the workers eliminate the buildup by disassembling the components and running them through a "large-parts washing machine." The washing machine was similar to a dishwasher, but the solvent cleaning solutions used had low flash points and were highly flammable.

The parties do not disagree about the events leading up to the accident that took Brierly's life. On Friday, August 27, 1993—three days before the accident—the seal on the main pump of the parts washing machine broke, allowing the flammable solvent solution to leak during operation of the machine. The employee who was operating the machine when the leak developed shut the washer down, notified Alusuisse's maintenance department, and reported the problem to his supervisor. The maintenance department made plans to remove the pump on the following Monday.

The district court found that the following precautions were taken to minimize the possibility that the removal of the pump would generate sparks and thus create a fire hazard:

(1) the electricity to the machine was locked out and tagged out; (2) the washing machine and solvent supply reservoir were drained of solvent; (3) the pit below the washer was ventilated with a compressed air hose over the course of the entire weekend to purge any accumulated fumes from underneath the machine; (4) the washing machine door was left open Friday evening so that the interior of the machine could be aired out over the weekend; (5) and a special floor-level ventilation system was left running during the weekend to help purge the room of fumes.

Before the pump was replaced and welding begun, Alusuisse took additional safety measures: "(1) water was placed in the pit below the machine so as to prevent sparks from igniting any dried solvent residue left behind from the leaking pump; and (2) welding blankets were placed on and around the filter basket housing and parts washing machine."

Dave Ellison, Alusuisse's corporate safety director, made two trips to the parts washing room on Monday. On his second trip to the washing room, Terry Lingle, the employee responsible for overseeing operation of the parts washing room, expressed concern that about the possibility that sparks created during the welding process could ignite a fire. However, both Ellison and Gary Wordlow, the maintenance supervisor, reassured Lingle about the many precautions that had been taken. Wordlow even volunteered to do the welding himself, but maintenance lead-man Reinhold Ritzi decided that he would do the welding because he had more experience than Wordlow. Subsequently, Elli-

son and Wordlow gave their final approval for the welding.

Wordlow, Ellison, and Ritzi apparently believed that the parts washing room had been monitored with the "LEL" meter, a device which is used to measure the "lowest explosive limit" of solvent vapor in an area before a flammable source is introduced. In the wake of the explosion, however, it was discovered that the LEL meter had not been used. Each of the men involved stated that they had assumed that one of the others had obtained the readings.

A "fire watch" crew was assembled before Ritzi began the welding. Wordlow and other maintenance crew members—including Brierly—stood by with fire extinguishers watching for stray sparks that could ignite a fire. Brierly, the least experienced member of the crew, was almost 12 feet away from the welding site, further away than any of the other crew members.

As Ritzi prepared to weld the filter basket cover, a spark ignited undetected residual solvent fumes inside the parts washing machine, causing an explosion. The explosion blew off the steel door on the opposite end of the parts washing machine, and the door struck Brierly, resulting in his death. Wordlow, Ritzi, and one other worker also suffered injuries as a result of the incident.

Several state and local administrative agencies investigated the explosion, including the Kentucky Labor Cabinet, the Kentucky Fire Marshal's office, and the Environmental Protection Agency. The Kentucky Labor Cabinet issued a citation to Alusuisse and assessed a $24,500 civil penalty based on the insufficiency of the precautions taken the day of the accident and the inadequate training of some of the workers in first aid and use of fire extinguishers. The Kentucky Fire Marshal's office concluded that the explosion was accidental.

After a coroner's inquest, the coroner's jury found that Alusuisse "deliberately placed [Brierly] and other employees in a known, unsafe and hazardous position" and recommended that the case be submitted to the Shelby County grand jury. On June 20, 1994, the grand jury indicted Alusuisse for reckless homicide under KRS 507.050, a class D felony. The indictment alleged that Alusuisse "committed the offense of reckless homicide when it recklessly caused the death of Paul D. Brierly by failing to perceive the substantial and unjustifiable risk of explosion which constituted a gross deviation from the standard of care that a reasonable person would observe in the situation as it then existed."

Brierly's administrator filed this tort action on his behalf in the Shelby County Circuit Court on May 12, 1994, naming Alusuisse and David Ellison as defendants. On June 8, 1994, within 30 days of being served with the complaint, Alusuisse removed the state court action to federal district court on the basis of diversity jurisdiction. On March 30, 1995, the district court remanded the action to the Shelby Circuit Court on Brierly's motion, because Alusuisse had failed to introduce evidence to establish complete diversity by showing that Ellison was no longer a citizen of Kentucky. Alusuisse then filed a motion to reconsider, which the district court denied, based on its conclusion that 28 U.S.C. § 1447(d) divested it from jurisdiction to consider such a motion after having remanded the case. At the same time it filed the motion to reconsider, Alusuisse also filed a second notice of removal. The district court again remanded the case, holding that the party that seeks to remove an action has the burden to present evidence of diversity in response to a motion to remand.

Ellison did not consent to either of Alusuisse's notices of removal or the motion to reconsider because he had not yet been served at the time Alusuisse filed these papers. Brierly had attempted to serve Ellison in Shelby County early in the proceedings but had been unsuccessful because Ellison had already left the state for Wisconsin. The district court noted that

Brierly had obtained the new business address of Ellison from Alusuisse in August 1994, but could not effect service upon him until late October 1995 because the district court had ordered a stay of proceedings in the case until it resolved the motion to remand. On November 10, 1995, Brierly filed an amended complaint and effected service upon Ellison. On November 30, 1995, within 30 days of being served, Ellison filed a notice of removal on the basis of diversity, and Alusuisse filed a notice of its consent to Ellison's removal on the same day. On January 30, 1996, the district court denied Brierly's motion to remand, taking judicial notice of Ellison's affidavit, in which he represented that he was a resident of Wisconsin at the time the original action was filed and thereby established complete diversity of the parties. On September 4, 1997, the district court granted Alusuisse's and Ellison's motions for summary judgment, and the plaintiff now appeals that order.

## DISCUSSION

### I. Jurisdiction

■ Brierly argues that the district court's first order of remand divested it of

all jurisdiction in this case, precluding it from later deciding, in the context of a second attempt to remove, that it did, in fact, have jurisdiction to hear the case. This question is governed by 28 U.S.C. § 1447(c) and (d). Subsection (c) provides in pertinent part that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Subsection (d) precludes reviewing such remand orders, providing that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...."

Although we have not previously addressed this specific issue, the language in § 1447(d) has been universally construed in other circuits to preclude further reconsideration or review of a district court's order remanding a case, because a remand to state court divests a district court of jurisdiction such that it may not take any further action on the case.[1]

We recognize, as the Fourth Circuit noted in *In re Lowe*, 102 F.3d 731, 734 (4th Cir.1996), that there are few exceptions to

---

1. *See, e.g., United States v. Rice*, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982 (1946) (applying 28 U.S.C. § 71); *In re Lowe*, 102 F.3d 731, 735 (4th Cir.1996) (issuing writ of mandamus instructing district court that had improperly reconsidered its previous remand order to remand case to state court and explaining "the entry of the order of remand ... divested the district court of all jurisdiction in this case and precluded it from entertaining any further proceedings of any character ...") (quoting *Three J Farms, Inc. v. Alton Box Bd. Co.*, 609 F.2d 112, 115 (4th Cir.1979)); *Hunt v. Acromed Corp.*, 961 F.2d 1079, 1081–82 (3d Cir.1992) (holding clerk's act of sending certified copy of order of remand deprived district court of jurisdiction to consider subsequent motion to file amended notice of removal); *Harris v. Blue Cross/Blue Shield of Alabama, Inc.*, 951 F.2d 325, 326–27 (11th Cir.1992) (holding both appellate and district court precluded from reviewing district court's finding that it lacked subject matter jurisdiction); *Seedman v. U.S. Dist. Court for the Cent. Dist. Of California*, 837 F.2d 413, 414 (9th Cir. 1988) (per curiam) (issuing writ of mandamus

instructing district court to remand case to state court despite district court's conclusion that initial order was based upon clerical error); *New Orleans Pub. Ser., Inc. v. Majoue*, 802 F.2d 166, 167 (5th Cir.1986) (per curiam) (holding employer's suit seeking declaratory and injunctive relief were attempts to seek collateral review of district court's earlier remand order over which federal court had no jurisdiction; vacating district court's order and remanding for order dismissing for lack of subject matter jurisdiction); *Federal Deposit Insurance Corp. v. Santiago Plaza*, 598 F.2d 634, 636 (1st Cir.1979) ("[o]nce a district court has decided to remand a case and has so notified the state court, the district judge is without power to take any further action."); *In re La Providencia Development Corp.*, 406 F.2d 251, 253 (1st Cir.1969) (holding district court cannot vacate remand order once entered even if persuaded it was erroneous because "nothing could be more inclusive than the phrase 'on appeal or otherwise.'"); 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3739 at 491 (3d ed.1998).

the general rule that remand orders are not reviewable and that these exceptions have been narrowly crafted by Congress and the courts. In this case, however, the removal by Ellison was not the functional equivalent of a motion to review or reconsider, but an original petition by a party with standing to remove after an initial remand because of his delayed service, the delay having been caused by the district court's stay order. We conclude that it would be unfair to preclude Ellison, a later-served defendant who was not involved in the first removal attempt, from the opportunity to present evidence regarding his residence and effect removal—with the consent of the remaining defendant, of course.

## II. The 30-Day Time Limitation of 28 U.S.C. § 1446(b)

■ Having determined that the district court had jurisdiction to consider Ellison's petition for removal, the next question we must consider is whether, in cases with multiple defendants served at different times, the last-served defendant is allowed a full 30 days after being served to remove or, instead, only has 30 days from time the first defendant is served. The question is one of first impression in this circuit and one that has divided our sister courts.[2] Our analysis begins with the statutory language. Under 28 U.S.C. § 1446(b):

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not re-

quired to be served on the defendant, whichever period is shorter. . . .

The statutory language itself contemplates only one defendant and thus does not answer the question of how to calculate the timing for removal in the event that multiple defendants are served at different times, one or more' of them outside the original 30-day period.

Faced with slightly different factual settings, the courts have reached varying results by emphasizing the policy underlying the statute. For example, in *Brown v. Demco, Inc.*, 792 F.2d 478, 481–82 (5th Cir.1986), the Fifth Circuit held that the failure of the first-served defendant to file a notice of removal within 30 days of service prevents all subsequently served defendants from later removing the action to district court unless there is evidence that the plaintiff intentionally delayed naming other defendant in a bad-faith attempt to prevent removal. *See also Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254 (5th Cir.1988); 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3739 at 337 (3d ed.1998) (citing cases). The original defendants in *Brown* could have removed earlier in the litigation because all the requirements for the district court to exercise diversity jurisdiction had been met, but they had not done so. In holding that the subsequently added defendant could not remove to federal court, the Fifth Circuit concluded:

> The general rule has been criticized as unfair. . . . [W]e do not perceive the suggested unfairness to the subsequently added defendant who is merely not granted an opportunity that might have been available to others. A defendant who is added to a case in which a co-defendant has failed to seek removal is in no worse position than it would have

**2.** The two leading treatises also diverge in their recommendations of how to resolve this legal issue. Wright & Miller recommend permitting a later-served defendant 30 days to remove, whereas Moore's Federal Practice recommends that the 30-day time limit should begin to run from service on the first defendant. *See* 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3739 at 336–39 (3d ed.1998); Moore's Federal Practice § 107–30[3][a] (3d ed.1997).

been in if the co-defendant had opposed removal or were domiciled in the same state as the plaintiff. To permit the defendants in this case to obtain removal after they have tested state-court waters for four years would give them a second opportunity to forum-shop and further delay the progress of the suit. The unfairness of this to the plaintiff outweighs the unfairness, if any, to the last-joined defendant. The forum for a suit ought to be settled at some time early in the litigation.

*Brown,* 792 F.2d at 482.

The Fourth Circuit, by contrast, has held that "individual defendants have thirty days from the time they are served with process or with a complaint to join in an otherwise valid removal petition." *McKinney v. Board of Trustees of Mayland Community College,* 955 F.2d 924, 928 (4th Cir.1992). In *McKinney,* the earlier-served defendants had petitioned for removal within their allotted 30 days, and the question was whether a later-served defendant could join in their removal petition after that 30–day period had elapsed. The Fourth Circuit articulated several policy considerations supporting its conclusion. First, the court stated, it did not believe Congress intended the inequity that would result from "establishing one fixed deadline for defendants served as much as thirty days apart." *Id.* at 927. The court additionally noted a policy concern that was not present when *Demco* was decided by the Fifth Circuit, pointing out that in 1988, Congress amended § 1446(a) to provide that petitions for removal are now subject to Rule 11 of the Federal Rules of Civil Procedure. *See* Judicial Improvements and Access to Justice Act, Pub.L.No. 100–702, § 1016(b), 102 Stat. 4669 (1988). In light of that amendment, the court reasoned, a rule that the last-served defendant has 30 days in which

to remove a case to federal court is imperative. "Otherwise, later served defendants will either have to forego removal or join hurriedly in a petition for removal and face possible Rule 11 sanctions." *McKinney,* 955 F.2d at 928. The court also responded to the argument that plaintiffs are entitled to know early in the proceedings whether the case will be heard in state or federal court, noting that plaintiffs can ensure a quick resolution of the forum by simply "mak[ing] sure that all defendants are served at about the same time." *Id.* at 927.

The facts in this case are somewhat different than the facts before the *McKinney* court in that the earlier-served defendants in *McKinney* had a valid petition for removal pending at the time the later-served defendant joined in the removal petition, whereas the earlier-served defendant in the case at bar had failed in its attempts to remove the case when the later-served defendant filed a new removal petition. Nonetheless, we find that the policy considerations articulated by the Fourth Circuit in *McKinney* are equally applicable to the facts before this court.

 Furthermore, as a matter of statutory construction, holding that the time for removal commences for all purposes upon service of the first defendant would require us to insert "first" before "defendant" into the language of the statute. *See id.* We are naturally reluctant to read additional words into the statute, however. If Congress had intended the 30–day removal period to commence upon service of the first defendant, it could have easily so provided. For that reason, and as a matter of fairness to later-served defendants, we hold that a later-served defendant has 30 days from the date of service to remove a case to federal district court, with the consent of the remaining defendants.[3]

---

**3.** Our holding on this issue raises the question of whether Alusuisse, who had previously failed in its attempts to remove the case to district court within the 30–day time limitation, could consent to Ellison's petition to remove the case. It appears that none of our sister circuits have addressed this issue. The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or

### III. The One–Year Limitation of 28 U.S.C. § 1446(b)

■ In addition to the 30–day time limitation provided by the first paragraph of 28 U.S.C. § 1446(b), set out in the preceding section of this opinion, the second paragraph of § 1446(b) provides an additional one-year time limit on removal:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a · copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.*

28 U.S.C. § 1446(b) (emphasis added).

"[I]n diversity actions Rule 3 [of the Federal Rules of Civil Procedure] governs the date from which various timing requirements of the Federal Rules begin to run." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) (footnote omitted). Thus, this action began on May 12, 1994, the date upon which Brierly filed his complaint with the court. *See* Fed.R.Civ.P. 3. Brierly contends that Ellison's removal some 18 months later violated the one-year limitation established by § 1446(b). Although this question is one of first impression in this circuit, we are guided in our inquiry by the Ninth Circuit's recent ruling on the

same issue in *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 407, 142 L.Ed.2d 330 (1998).

■■ As framed by the court in *Ritchey,* the question is basically whether the exception stated in the second paragraph of § 1446(b) applies to the entire subsection, or only to the second paragraph, quoted above. *See Ritchey,* 139 F.3d at 1316. In interpreting the statutory language, we are mindful that the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Thus, in the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts.

Nevertheless, in this case we are constrained by the plain language of the statutory provision. Based upon ordinary language usage, the qualifying clause— "except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action" can only be interpreted to modify the antecedent clause to which it is attached, and not previous sections of the text. If Congress had intended to place a one-year limitation on removal of all diversity cases, it surely would have chosen less obscure and coun-

---

otherwise properly joined in the action must either join in the removal, or file a written consent to the removal. We conclude that a first-served defendant can consent to a later-served defendant's removal petition, despite having already failed in its own efforts to remove. Given the rule of unanimity, holding otherwise would vitiate the removal application of the later-served defendants and thereby nullify our holding that later-served defendants are entitled to 30 days to remove the case to district court. *See Freeman v. Bechtel,* 936 F.Supp. 320, 325–27 (M.D.N.C.1996) (holding first-served defendants could consent

to later-served defendant's removal despite having already waived their right to removal); *but see Holder v. City of Atlanta,* 925 F.Supp. 783, 785–86 (N.D.Ga.1996) (holding that later-served defendants cannot obtain consent from defendants who failed to remove within their own 30–day period); *Scialo v. Scala Packing Co., Inc.,* 821 F.Supp. 1276, 1278 (N.D.Ill.1993) (refusing to allow later-served defendants whose petition to remove had failed because of noncompliance with § 1446(b) to consent to first-served defendant's petition for removal).

ter-intuitive wording to accomplish that purpose. In addition, the policy discussion found within the legislative history provides support for this interpretation. *See Ritchey,* 139 F.3d at 1316–17(discussing legislative history); *see also New York Life Ins. Co. v. Deshotel,* 142 F.3d 873, 886–87 (5th Cir.1998) (same). We hold that the one-year limitation on removal of diversity cases applies only to those that were not initially removable and, therefore, that Ellison's petition for removal was not untimely.[4]

### IV. The Motion for Summary Judgment

■ The district court granted the defendants' motions for summary judgment on the basis of the exclusive-remedy provision of the Kentucky Workers' Compensation Act that applies to workplace injuries:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. . . .

Ky.Rev.Stat.Ann. § 342.690(1) (Michie 1997). The plaintiff, however, argues that this case falls within the "deliberate intention" exception to the exclusivity of remedies established by the Act. Kentucky Revised Statute 342.610(4) provides that an employee or his dependents can file a civil action against his employer if "the injury or death results to the employee through the deliberate intention of his employer to produce such injury or death." Based on

the facts in the record before us, we cannot agree.

The plaintiff contends that Alusuisse's intent to kill Brierly can be inferred from the circumstances surrounding his death. But, as the district court noted, "[t]he statutory standard . . . requires more than implied intent; it requires 'deliberate intention.'" In support of this proposition, the court cited *Fryman v. Electric Steam Radiator Corp.,* 277 S.W.2d 25 (Ky.1955), in which the Kentucky Supreme Court held that even though an employer had known that the machine that injured his employee was dangerous and failed to warn the employee, had failed to properly maintained the machine, and had provided no safety devices on the machine, there was no evidence that the employer had "determined to injure the employee" as required by the phrase "deliberate intention." *Id.* at 26.

We conclude that the district court, relying on controlling state law, correctly concluded that the plaintiff's allegations are insufficient to meet the specific or deliberate intent exception to the exclusive-remedy provisions of the Kentucky Workers' Compensation Act. The defendants took many precautions, albeit clearly not enough, and placed Brierly furthest away from the washer in the "fire watch" line. As the district court noted,

> . . . if Brierly's death was intended, an explosion such as this seems like a strange, clumsy, and unreliable way to carry it out. Significantly, it was Reinhold Ritzi, who was not in charge of the operation, that determined Brierly's position in the room at the time of the explosion. It seems far fetched that Alusuisse would decide to kill Brierly by *creating a spark with a welding rod so*

---

4. In support of his argument that the one-year limitation applies to all diversity actions, Brierly cites the Supreme Court's recent opinion in *Caterpillar Inc. v. Lewis,* in which the Court commented that "[n]o case, however, may be removed from state to federal court based on diversity of citizenship 'more than 1 year after commencement of the action.'" 519 U.S. 61,

69, 117 S.Ct. 467, 473, 136 L.Ed.2d 437 (1996) (quoting 28 U.S.C. § 1441(b)). The Supreme Court, however, was not addressing the interpretation question presented here, and was speaking of actions that were not originally removable. *See* 519 U.S. at 67–70, 117 S.Ct. at 472–73.

**536**

as to set off an explosion in an adjacent machine which would then blow off a sealed 350–pound steel door that would strike and kill Brierly.

In light of the Kentucky Supreme Court precedent interpreting the phrase "deliberate intention," we conclude that the plaintiff did not present evidence to the district court from which a reasonable jury could conclude that Alusuisse deliberately intended to cause Brierly's death. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if Alusuisse's actions were reckless or wanton, which may be a fair characterization, there is no indication or reasonable inference that the company intended to injure or kill Brierly. Accordingly, the Kentucky Workers' Compensation Act provides the exclusive remedy for Brierly's death.

Likewise, the Kentucky Worker's Compensation Act provides the exclusive remedy against a fellow employee whose actions cause him injury or death:

> The exemption from liability given an employer by this section shall also extend to such employer's ... employees ... provided the exemption from liability given an employee ... shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee....

Ky.Rev.Stat.Ann. § 342.690(1) (Michie 1997). As the district court held, the plaintiff has not alleged that Ellison intentionally and physically attacked him and, on the facts of this case, he does not fall within the statutory exception.

### CONCLUSION

For the reasons set out above, we conclude that the district court had jurisdiction over this action because it was properly removed from state court by the later-served defendant, Ellison, with the consent of Alusuisse; that the removal was timely because the one-year limitation on removal does not apply in this case; and that summary judgment was properly awarded to the defendants. We therefore **AFFIRM** the district court's judgment in all respects.