**Brian J. HARDY, Administrator, etc., Plaintiff,**

v.

**SQUARE D COMPANY, et al., Defendant.**

**Case No. 3:02 CV 7054.**

United States District Court, N.D. Ohio, Western Division.

April 10, 2002.

*MEMORANDUM OPINION*

KATZ, District Judge.

Pending before this Court is Plaintiffs' Motion to Remand. Based upon careful consideration of Plaintiffs' Motion, Defendant's Response, Plaintiffs' Reply, and the entire record herein, the Court will grant Plaintiffs' motion and the matter will be remanded to the Lucas County Court of Common Pleas.

### I. BACKGROUND

On or about November 24, 1997, decedent James Milton Hardy was fatally injured while working on a die casting machine at his employer Doehler–Jarvis Toledo, Inc. Decedent's injuries allegedly were caused by a failure of a limit switch manufactured by Defendant Square D Company ("Square D"). On May 4, 1998, Plaintiff Brian J. Hardy, Administrator of the Estate of James Milton Hardy, filed a wrongful death suit in the Court of Common Pleas, Lucas County Ohio. Plaintiff voluntarily dismissed that suit on December 28, 2000 and subsequently reached a settlement with Doehler Jarvis in an unknown amount.

On December 21, 2001, Brian Hardy refiled a wrongful death and survival action on behalf of James Milton Hardy and all wrongful death beneficiaries against Square D and John Doe Number One.[1]

---

1. Square D asserts that it is the sole Defendant named in the action. Plaintiffs assert, and the caption on the amended complaint indicates, that John Doe Number One is listed as an additional defendant. However, Plain-

Plaintiffs allege that Defendant Square D was negligent and is strictly liable with respect to "a limit switch and its component parts which were either designed and/or manufactured and/or marketed and/or supplied and/or distributed and/or sold and/or rebuilt and/or reworked and/or reconditioned the limits switch at issue." Pls.' Mot. at 2. On December 27, 2001 Plaintiffs filed a First Amended Complaint.

The original complaint, along with summons, was received via certified mail by Square D's agent, CT Corporation System ("CT"), on December 27, 2001. The Complaint was postmarked December 24, 2001. On December 28, 2001, CT notified two individuals at Square D via email as to receipt of service and forwarded a copy of the complaint via Federal Express 2nd Day delivery. Square D alleges to have received a copy of the complaint on January 2, 2002. For reasons not made apparent to the Court, a copy of the original complaint is not a part of the record.[2]

Plaintiffs' First Amended Complaint allegedly was served, albeit it is not entirely clear to whom, on January 2, 2002. Square D alleges to have received a copy of the amended complaint on January 3, 2002. The record does not reveal the method of transmission or postmark date of the amended complaint. Plaintiffs assert, and Defendant does not contest, that

tiffs' motion and reply list only Square D as a defendant and do not include "et al." in the case caption. Based upon the record before the Court, it is unclear as to the status of John Doe in this action.

2.

A defendant ... desiring to remove any civil action or criminal prosecution from a State court shall file in the district court ... a notice of removal ... containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant. ...

the amended complaint "did not change any of the general standards or allegations in the original complaint." Pls.' Mot. at 2.

On January 30, 2002, Square D filed a Notice of Removal from the Lucas County Court of Common Pleas to the United States District Court, Northern District of Ohio, pursuant to 28 U.S.C. §§ 1441, 1446. As grounds for removal, Defendant asserted that "[t]his court has original jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000." [3] Defs.' Notice at 2.

On February 6, 2002, Plaintiffs timely filed a motion to remand the matter to the state court. See 28 U.S.C. § 1447(c). Plaintiffs assert that Defendant's notice of removal was untimely filed because Square D did not file the notice within thirty days of receipt of the original complaint. The Court addresses below Defendant's numerous arguments in opposition to Plaintiffs' motion.

## II. DISCUSSION

### A. Standard for Removal

28 U.S.C. § 1446 governs the procedure for filing a notice of removal. Pursuant to this statute:

28 U.S.C. § 1446(a). The Court notes that the parties do not utilize in their computations any dates relevant to the filing, service, or receipt of the amended complaint. As Defendant has not argued that it could not ascertain, from the face of the original complaint, that removal was proper, the Court's analysis centers on the dates applicable to the filing, service, and receipt of the original complaint.

3. Plaintiffs are Ohio citizens. Square D is incorporated in Delaware and has its principle place of business in Illinois and thus is a citizen of those states.

The notice of removal ... shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

▮▮▮ Courts generally construe this statute strictly in favor of state court jurisdiction and resolve all doubts in favor of remand. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir.1999). "However, while the removal requirements are strictly applied, they should also be given practical effect in accordance with the statute's apparent intent." *Standifird v. Town of Boxborough*, 2000 WL 1530885, at *1, 230 F.3d 1347 (1st Cir.2000) (citing *Hendrix v. New Amsterdam Cas. Co.*, 390 F.2d 299, 301–302 (10th Cir.1968); *McGuigan v. Roberts*, 170 F.Supp. 372, 373–374 (S.D.N.Y.1959)); *see also Shelton v. City of Hartford*, 1999 WL 200695, at *1, 1999 U.S. Dist. LEXIS 4875, at *2 (D.Conn. Feb. 23, 1999). The party seeking removal bears the burden of establishing that removal is proper. *See Her Majesty the Queen in Right of the Prov-*ince *of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989). Courts generally regard a defendant's failure to comply with the statute's procedural requirements as grounds for remand.

The crux of the instant matter is the thirty day period in which a defendant must file the removal notice. The parties raise two primary issues regarding this filing period: (1) they dispute the applicability of Federal Rule of Civil Procedure 6 to the computation of time under the removal statute, and (2) they adopt different positions as to what constitutes "receipt," and what act therefore triggers the thirty day filing period. Although not explicitly addressed by the parties, a critical issue begging resolution arises from the fact that service was not accomplished through personal delivery but rather effectuated through mail service. This scenario requires the Court to determine whether "receipt" is to be construed in reference to the date of physical receipt of summons and/or complaint, or alternatively whether "receipt" instead properly is defined by reference to the relevant state statute governing service of process.

**B.  Overview of the Parties' Claims**

Defendant asserts that Federal Rule of Civil Procedure 6 is applicable to the computation of time under the removal statute and offers two different calculations, each utilizing a different date as the trigger date for the thirty day removal period. Both scenarios, according to Defendant's calculations, result in a timely filing of Defendant's removal notice. In its computations Defendant uses: (1) January 2, 2002, the date on which Square D physically received a copy of the original complaint; and (2) December 28, 2001, the date CT sent notice of service to Square D. Defendant utilizes these dates because it asserts that service upon its agent does

not constitute "receipt" for the purposes of the removal statute. Defendant also relies upon application of Rules 6(a) and (e), which ostensibly extend Defendant's filing period by a number of days to account for weekends and mail time.

Plaintiffs assert that Rule 6 is inapplicable to computing the removal statute's filing period. Plaintiffs also argue that December 27, 2001, the date of service upon Square D's agent, CT, is the proper trigger date for calculating the thirty day filing period. Neither Plaintiffs nor Defendant make reference in their calculations to the date on which the summons and complaint were mailed.

As the applicability of Rule 6 to the removal statute is a matter of first impression in this district, and the Court finds no decision from the Sixth Circuit addressing this issue, the Court presents alternative analyses of the removal statute's thirty day filing period, both with and without reference to the Federal Rules' computation of time provisions. In its discussion of the applicability of Rule 6, the Court also addresses the parties contentions as to the sufficiency of service upon an agent for purposes of the removal statute's "receipt" requirement.

## C. Computation of the Removal Statute's Thirty Day Filing Period

Defendant first utilizes January 2, 2002, the date of actual physical receipt by Square D of the Complaint, to compute the statute's filing period. Using this date, the January 30, 2002 filing of the notice of removal is within the thirty day window. However, as discussed *infra*, the Court does not regard January 2, 2002, as the operative date for computing the filing period.

Alternatively, Defendant uses December 28, 2001, the date CT notified Square D of CT's receipt of summons and the original complaint. Using December 28 as a start-ing point, Defendant applies Rule 6(a) and concludes that "the 30 days set forth in § 1446 started on December 29, 2001 and ended on January 27, 2002." Def.'s Resp. at 5. Defendant then points to Rule 6(e) and adds three days to extend the "period for filing the notice of removal ... from January 27, 2002 until January 30, 2002." *Id.*

Plaintiffs assert that receipt by a designated agent constitutes receipt for purposes of the removal statute and thus argue that January 2, 2002 is not a proper starting point for the computation of the thirty days. Plaintiffs argue that December 27, the date CT received summons and service, is the proper starting point. Using this date, Plaintiffs argue that Defendant's notice was untimely filed. Plaintiffs arrive at this conclusion by arguing that Rule 6 is inapplicable to the computation of time because the "removal statute is to be construed strictly out of due regard for the rightful independence of state governments." Pls.' Reply at 3.

### 1. Application of Federal Rule of Civil Procedure 6 to 28 U.S.C. § 1446(b)

Preliminarily, the Court notes that by its express terms, Rule 6(a) appears to contemplate application to the removal statute. Federal Rule 6(a) provides:

> In computing **any period of time** prescribed or allowed by these rules, ... **or by any applicable statute,** the day of the act ... from which the designated period of time begins to run shall not be included. The last day of the period shall be included, unless it is a Saturday, a Sunday, or a legal holiday....

FED.R.CIV.P. 6(a) (emphasis added).

Moreover, by its terms, Rule 6(e) is not limited, as suggested by some courts, merely to computing the time in which a party must effectuate service. *See, e.g.,*

*Skidaway Assoc., Ltd. v. Glens Falls Ins. Co.,* 738 F.Supp. 980, 981 (D.S.C.1990). Instead, the rule provides that "[w]henever a party has the right or is required to do some act ... within a prescribed period after the service of a notice or other paper upon the party...." FED. R. CIV. P. 6(e). The Court does not construe this language as limiting application of the rule only to computing the time in which a party must effectuate service of process, but instead reads the rule as arguably applicable to computing the time in which any action is required of a party, so long as that required action is triggered by "service of a notice or other paper upon the party." FED.R.CIV.P. 6(e).

Ultimately, this Court does not take issue with the theory that Rules 6(a) and (e) are applicable to the instant action, on the facts of this particular case.[4] However, the Court notes that the parties' computations in the instant action fail to acknowledge two important facts: (1) "receipt," as measured by the statute, is through either (a) "service" or (b) "otherwise"; and (2) in the instant action, "service," and therefore arguably "receipt" for the purposes of the removal statute, was effectuated through mail service. *See* 28 U.S.C. § 1446(b) (providing that the removal notice must be filed "within thirty days after the receipt by the defendant, *through service or otherwise*") (emphasis added).[5] The latter point is critical because it appears that Rule 6(e) would be properly read and applied only in light of a state's rules governing service of process.[6] Ohio Rule 5, which is nearly identical to the corresponding Federal Rule 5, provides that "[s]ervice by mail is complete *upon mailing.*" OH. CIV. R. 5(B) (emphasis added). Common sense dictates that in instances of mail service, it is only upon reference to the mailing date as the service date, and therefore "receipt" date, that application of Rule 6(e) would comport with a strict construction of the removal statute and therefore be permissible.

In the instant action, Plaintiffs effectuated service of process through certified mail, and this was the manner by which Defendant, or specifically CT, first received a copy of the summons and complaint. Therefore, "receipt," for purposes of the removal statute, was through "service," and the trigger date would be December 24, 2001, the date Plaintiffs mailed the summons and complaint. Cognizant that "the day of the act ... from which the designated period of time begins to run shall not be included," FED. R. CIV. R. 6(a), the Court calculates that the thirty day

4. The Court makes clear that its reasoning as to the applicability of Rules 6(a) and (e) is based upon the particular facts of the instant case. Rule 6(e) obviously would be irrelevant where service is effectuated through personal delivery. That said, the Court notes that it perceives no inequity in applying Rule 6(a), regardless of the method of service, to computing the removal statute's filing period.

5. The "or otherwise" language in the statute has been interpreted to address those situations, *e.g.,* in which mere filing, as opposed to service of a complaint is required by the local rules, or when a party receives a courtesy copy of a complaint prior to proper filing and service of the same. The Supreme Court in *Murphy Bros., Inc. v. Michetti Pipe Stringing,*

*Inc.,* 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999), addressed when the removal statute's "receipt" requirement is satisfied in light of four different scenarios involving the cross-riming of service of summons and filing or service of the complaint. The Court ultimately concluded that a party must first be subject to a court's authority, *i.e.,* be properly served with summons, before receipt of a complaint can trigger the removal statute's thirty day filing period.

6. As service was made while the action was subject to state court jurisdiction, state law determines when service is made; however, federal law defines the procedure for removal.

period concluded on January 23, 2002. However, Rule 6(e) provides:

> Whenever a party has the right or is required to do some act ... within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

FED.R.CIV.P. 6(e). Applying this provision, Defendant would have had until January 26 to file its removal notice. As this date falls on a Saturday, the last day on which Defendant could have filed is extended to Monday, January 28. *See* FED. R. CIV. R. 6(a) (explaining that "[t]he last day of the period shall be included, unless it is a Saturday, a Sunday, or a legal holiday, ... in which event the period runs until the end of the next day which is not one of the aforementioned days").

Defendant argues not only that is entitled to the additional filing time as provided for in Rule 6, but also that the proper trigger date for purposes of the time computation is the date of actual receipt. The Court views this as an unsound "have its cake and eat it too" approach, and finds that it would be not only inequitable but also contrary to the strict construction principle applied to the removal statute. Defendant cannot avail itself of an interpretation that allows it, in essence, to account for mail time by gauging "receipt" as the date of actual receipt, as opposed to date of mailing, and then add on an additional time period, which realistically would amount to a double accounting of the mailing period.

A number of courts have applied Rule 6 in computing the removal statute's filing period. *See Standifird v. Town of Boxborough*, 2000 WL 1530885, at *1, 230 F.3d 1347 (1st Cir.2000) ("notice of removal was timely filed, measured pursuant to Fed. R.Civ.P. 6(a), within thirty days of defendant's receipt of the complaint"); *Wells v.*

*Gateways Hosp. & Mental Health Ctr.*, 1996 WL 36184, 76 F.3d 390 (9th Cir.1996) (using Rule 6(a) to extend filing deadline from thirtieth day, which landed on a Sunday, to the following Monday); *In re Diet Drugs Prods. Liab. Litig.*, 1999 WL 554584 (E.D.Pa. July 19, 1999) (permitting defendant to file on Monday, *i.e.*, day thirty two, pursuant to Rule 6(a), when thirty day period expired on a Saturday); *Grossman v. ABC Appliance, Inc.*, No. 98–75211, 1999 U.S. Dist. LEXIS 2786, at *5 (E.D.Mich. Feb. 9, 1999) (determining pursuant to Rule 6(e) that "the thirty day period outlined in section 1446(b) is extended by three days where service was accomplished through the mail"); *Medina v. Wal–Mart Stores, Inc.*, 945 F.Supp. 519, 521 (W.D.N.Y.1996); *Barton v. Lloyd's of London*, 883 F.Supp. 641, 642 n. 3 (M.D.Ala.1995); *Orr v. Trina, Inc.*, 1994 WL 28028 (N.D.Cal. Jan. 25, 1994) (concluding that because service was through certified mail, "[t]he limitation period also must include three days pursuant to F.R.C.P. Rule 6(e) for a total of 33 days"); *McGovern v. Mucklow*, 1992 WL 160639 (E.D. Pa. June 24, 1992) (determining that "[w]hen the party who is required to serve notice chooses to do so by mail, ... the opposing party receives an additional three days to remand the action"). Unfortunately, it is not clear from the facts set forth in these decisions whether these courts computed the removal statute's filing period from the service date as defined in the relevant state statute, or instead from the date of physical receipt by a defendant and/or its agent.

In making its determination, this Court finds instructive the rationale articulated in those decisions determining that Rule 6 is inapplicable to the removal statute. The Court does not necessarily agree that Rule 6 is inapplicable, but rather finds the reasoning nonetheless relevant to this Court's decision. Notably, a number of courts de-

clining to compute the removal statute's filing period in conjunction with Rule 6, particularly 6(e), have done so based upon the resulting "double accounting" noted above. *See, e.g., Mitchell v. Ky–Am. Water Co.,* 178 F.R.D. 140, 142 (E.D.Ky.1997) (finding it "illogical to apply Fed.R.Civ.P. 6(e), allowing for a three-day grace period to accommodate 'mail time', to the removal statute which states that the time-clock does not start ticking until after 'mail time' has run, i.e., after the defendant receives service"); *Connors v. Philadelphia,* 1994 WL 198659, ——, 1994 U.S. Dist. LEXIS 6596, at *2 (E.D.Pa. May 20, 1994) (finding "no logical reason to add three days to the allotted period" because "the thirty-day period for removal did not begin to run until after Defendants received the Complaint in the mail").

The Court recognizes that Plaintiffs object to application of Rule 6 to the computation of time under the removal statute.[7] However, even if the Court were to apply Rule 6, Square D did not file its removal notice until January 30, 2002 and its notice thus was untimely, based upon the reasoning set forth above.

### 2. Adequacy of service upon a party's agent

Presuming for the sake of argument that the operative date is not the mailing date, but rather the date of actual physical receipt by Defendant, the Court still determines that Defendant's removal notice was untimely filed. The Court discusses below the parties contentions regarding what date properly is regarded as the "receipt" date for calculating the filing period.

Plaintiffs assert that receipt, and therefore the thirty day filing period, commences "when notice is received by one authorized to accept service of process," Pls.' Reply at 5, and thus argue that "the thirty day computation of time prescribed by the removal statute began on the date of initial service to Defendant on December 27, 2001." *Id.* at 6.

Defendant cites to *Cygielman v. Cunard Line Ltd.,* 890 F.Supp. 305 (S.D.N.Y.1995), which purportedly supports Defendant's argument that "the time for removal runs from receipt of the pleading by the defendants rather than the statutory agent." Def.'s Resp. at 4. In *Cygielman,* the court determined that a "defendant's right to a federal forum ought not to depend upon the rapidity and accuracy with which statutory agents inform their principals of the commencement of litigation against them." *Cygielman,* 890 F.Supp. at 307. However, Defendant's reliance upon that case is misplaced.

Despite Defendant's assertion that drawing a distinction "between a statutory agent and CT ... ignores the limited purpose served by CT," Def.'s Resp. at 4, the cases cited in *Cygielman,* and a number of cases citing *Cygielman,* make precisely such a distinction. *See Skidaway Assoc., Ltd. v. Glens Falls Ins. Co.,* 738 F.Supp. 980, 982 (D.S.C.1990) ("service on a statutory agent ... does not start the running of the removal statute time limitation period as would service on the defendant or an agent designated by the defendant"); *Farris v. Youngblood,* 248 F.Supp. 598, 599 (E.D.Tenn.1965) ("time for removal ... is computed from the date the defendant, or an agent appointed by him, actually re-

---

**7.** In support of its argument that Rule 6 is inapplicable to the removal statute, Plaintiffs invoke the "receipt rule." Plaintiffs' reliance upon this rule is misplaced for two primary reasons: (1) the United States Supreme Court expressly rejected this rule in *Murphy Bros.;*

and (2) even had the Supreme Court not abrogated the "receipt rule," the rule has no application to the instant inquiry because that rule addresses the cross-timing of the summons and complaint, which were served simultaneously in the instant action.

ceives the process, as opposed to the date a statutory agent of the defendant receives the summons"); *Barber v. Willis*, 246 F.Supp. 814, 815 (N.D.Ga.1965); *Isbell v. Osgood*, 234 F.Supp. 602, 603 (E.D.Okla. 1964); *Hall v. Bowman*, 171 F.Supp. 454, 455 (E.D.Mo.1959); *Mahony v. Witt Ice & Gas Co.*, 131 F.Supp. 564, 567 (W.D.Mo. 1955); *see also Auguste v. Nationwide Mut. Ins. Co.*, 90 F.Supp.2d 231, 233 (E.D.N.Y.2000) (noting that "[a] few courts have recognized that these equitable concerns do not apply with the same force where a defendant has hand picked an agent, like CT Corporation System here, to receive service of process"); *Recyclers Consulting Group, Inc. v. IBM–Japan, Ltd.*, 1997 WL 615014, at *3–4 (S.D.N.Y. Oct. 3, 1997) (explaining the "significant distinction" between service on a statutory agent as opposed to a defendant's designated agent).

While this Court disagrees with the rather imprecise manner in which the aforementioned cases delineate between "statutory" and "designated" agents, the courts' rationale for doing so nonetheless is sound and applicable to the instant action. In these cases, the "statutory" agent really was a "default" agent, *i.e.*, an agent not personally "designated" by a defendant, but rather established through operation of law, such as an attorney general, highway commissioner, or insurance commissioner. Circumstances giving rise to service upon a default agent might include a party's failure to comply with a statute requiring the party to select an agent, or an inability to locate the selected agent. In such circumstances, a state's corporation statute frequently will prescribe an alternate party upon whom service may or must be made. For example, in Ohio, foreign corporations, such as Square D, are required to "maintain an agent, sometimes referred to as the 'designated agent,' upon whom process against the corporation may be served" within the state. OHIO REV.CODE § 1703.041. Similarly, domestic corporations in Ohio (and Delaware as well) are required to "have and maintain an agent, sometimes referred to as the 'statutory agent,' upon whom any process ... may be served." OHIO REV.CODE § 1701.07. For foreign corporations, the secretary of state "shall be the agent ... if the corporation has failed to designate another agent when required to do so ..., or if the license of a corporation to do business in this state has expired or has been canceled." OHIO REV.CODE § 1703.19.

While most cases addressing the issue have made a distinction between a "statutory" agent on the one hand and a "designated" agent on the other, it is clear that the proper distinction, if to be made, is not on the arbitrary title or classification given to the agent, but rather on the role that a defendant plays in the appointment of the agent.[8] If a defendant, as in the instant action, specifically selects or designates, through contract or because compelled by statute to do so, an agent for purposes of receipt of service, then it stands to reason that such an agent will have a higher level of accountability to the defendant than a "default" agent. Conversely, if an agent, such as an attorney general or highway commissioner, is established by operation of law, without having been personally selected by a party, then such agent may not have the same level of accountability to a party regarding prompt notification and

---

**8.** This point is illustrated by the fact that the Ohio Code refers to an agent selected by a domestic corporation as a "statutory" agent, yet refers to an agent selected by a foreign corporation as a "designated" agent. Without proper consideration of the level of ac-countability of these agents to a defendant, blind adherence to the mere title given these agents would result in a vastly different outcome for foreign and domestic defendant corporations seeking removal.

forwarding of service. In the latter scenario, it is arguably fair to diverge from the normal principle that service upon an agent constitutes service upon the principal party, and therefore compute the removal statute's filing period from date of receipt by a defendant, as opposed to its agent. *See Tech Hills II v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 968 (6th Cir.1993) (noting that "as a general rule, a complaint is considered received by a corporation when it is received by an agent authorized to accept service of process").

█ In the instant action, however, Defendant provides no compelling reason for the Court to depart from this well-established principle. *See Her Majesty the Queen*, 874 F.2d at 339 (noting that the party seeking removal bears the burden of establishing that removal is proper). Defendant does not assert that CT is not Square D's agent of choice, nor does it assert that CT was not authorized to receive service of process on Square D's behalf. Therefore, the Court regards the date of service upon CT, December 27, 2001, as the date of service upon Square D. Thirty days from December 27 falls on Saturday, January 26, 2002. Even if Defendant could avail itself of a carry over to Monday, as provided for in Rule 6(a), the thirty day period expired on Monday, January 28. Based upon the double accounting principle discussed above, it would not be appropriate to afford Defendant the three extra "mailing" days provided for in Rule 6(e). Similarly, even if the operative date were December 28, 2001, the date on which Square D received notice of service upon CT, Defendants removal notice was due on Sunday January, 27. Even assuming that Defendant was entitled to a Monday carryover per Rule 6(a), the notice still was untimely. Using either date, the removal notice was timely only if Defendant can avail itself of the three day mailing period provided for in Federal Rule of Civil Procedure 6(e), which this Court has determined is not appropriate.

Ultimately, the Court is guided by the well-established principle that in deciding removal issues, courts generally construe the removal statute narrowly against removal, and doubts are resolved in favor of state court jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214, 1219 (1941); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir.1999) (stating that "[a]ll doubts are resolved against removal"); *Brierly*, 184 F.3d at 534 (explaining that "in the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts").

### III. CONCLUSION

For the foregoing reasons, Defendant failed to timely file its notice of removal, and the Court will grant Plaintiffs' Motion to Remand (Doc. No. 9).

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Plaintiffs' Motion for Remand (Doc. No. 9) is granted. The matter is remanded to the state court from which the action was removed, the Court of Common Pleas, Lucas County, Ohio.